UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANDREA MORSHAEUSER,                          CIVIL ACTION
wife of and PAUL JAMES CASEY FOS

v.                                           NO. 12-2210

CITIMORTGAGE, INC., ET AL.                   SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are three motions: (1) defendants Anne
Raymond and Jackson & McPherson's motion to dismiss; (2) defendant
Citimortgage's Rule 12(b)(6) motion to dismiss; and (3) plaintiffs'
motion to remand.  For the reasons that follow, the plaintiffs'
motion to remand is DENIED; Anne Raymond and Jackson & McPherson's
motions to dismiss is GRANTED; and the hearing on Citmortgage's
motion to dismiss is continued to November 7, 2012, on the papers,
after submission of supplemental papers no later than October 31,
2012.

**Background**

This litigation arises from the commencement of foreclosure
proceedings on Andrea Moreshaeuser and James Paul Casey Fos' house
in Covington, Louisiana.

On April 22, 2005 Andrea Moreshaeuser and Paul James Casey Fos
bought a house at 70355 8th Street in Covington, Louisiana.  The
purchase was made with a loan from Parish National Bank; the loan
was evidenced by a Note and secured with a mortgage on the
property.  The Note was made payable to the defined lender (Parish

1

National Bank d/b/a Parish National Mortgage) but the mortgage was given to Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary.   Parish National Bank then assigned and transferred the mortgage and mortgage note to MERS; the assignment of mortgage was recorded with the Clerk of St. Tammany Parish on April 24, 2006.[1]

After the Foses began making their monthly payments under the note, they were informed that the payments should be made to Irwin Mortgage and, thereafter, were informed by Citimortgage, Inc. that the mortgage payments should be made to Citimortgage.

During the Fall of 2010, because of an illness in the family, the Foses fell behind on the payments on the note.   Mr. Fos remained in contact with Citi during this time.   But, when the payments on the note were 70 days in arrears, Mr. Fos spoke with a Citi representative and informed that representative that payment would be forthcoming in 10 days.   The Citi representative orally guaranteed that no adverse action would be taken on the account until the arrears had reached 90 days.

At 75 days in arrears, however, Citi accelerated the note; this acceleration was not carried out according to the terms of the

---

[1]According to the allegations of the state court petition, "MERS is a corporation which, on information and belief, was organized by the larger banks in the United States, including Citimortgage with the sole purpose of attempting to avoid and/or reduce filing fees with the clerks of court throughout the country."

note.   Three days later, Mr. Fos called Citi to make full payment of the arrears on the account.   The Citi representative told Mr. Fos that the loan had been foreclosed three days earlier and refused the offer to pay.[2]

In January 2011 Citi was represented by Anne Raymond, who was a partner with Jackson & McPherson, LLC.   On January 10, Ms. Raymond filed with the Clerk of Court of St. Tammany Parish a petition for executory process to foreclose on the mortgage and enforce the note.   In the verified petition, Citi and Raymond (acting as attorney for Citi and representative of Citi) asserted that Citi was the holder of the note secured by the mortgage on the Fos property.[3]   Two days later, the St. Tammany Parish court ordered the Sheriff to seize and sell the property.   On January 24, 2011 the Sheriff of St. Tammany Parish constructively seized the Fos property.

During the spring and summer of 2011 Mr. Fos applied twice for a loan modification or reinstatement.   During this time, Citi failed to properly process the modification and reinstatement application, failed to keep the Foses informed, and failed and refused    to    staff    its    departments    to    process

---

[2]This refusal violates clause 10 of the mortgage, according to the Fos.

[3]Ms. Raymond verified the allegations made in the petition and attorney and notary republic, Rader Jackson, a partner at Jackson & McPherson law firm, notarized Raymond's signature on the verified petition.

modification/reinstatement applications.  Also during this time, the Sheriff's sale of the house was set, cancelled, and re-set numerous times.  It is the Fos' position that the re-settings were done in bad faith to increase fees and as part of a plan to make any final loan payoff more difficult and so that the Foses could not reinstate or payoff their loan.

On July 21, 2011 Citimortgage, through its counsel Jackson & McPherson, submitted to Fos a Citimortgage Payoff Quote in the amount of $123,517.30, which was represented to be "good only through August 15, 2011 or any scheduled Sheriff's Sale, whichever occurs first" for the full payment of the debt Citi alleged was owed to it by the Foses.  About a week later, the same Payoff Quote was sent to the Foses a second time.

On September 2, 2011 Citi submitted, through its counsel Jackson & McPherson, to Fos another Payoff Quote, this time for $124,194.69 and good through September 13 or any Sheriff's sale. Four days later, following the law firm's instructions, Fos transferred to Jackson & McPherson the Payoff amount of $124,194.69.

On September 8, 2011 Mr. Fos wrote to Ms. Raymond to request assurances that the pending Sheriff's sale on the property had been cancelled, that the seizure of the property be reversed, that the mortgage inscribed in the records of the Clerk of Court be cancelled, and that the note be returned to Mr. Fos as being

4

cancelled.   In response, Teri Watson of Jackson & McPherson confirmed that the September 14 Sheriff's sale had been cancelled "due to the loan being paid in full", and advised Mr. Fos to ask Citi directly to return the cancelled note.

Mr. Fos then attempted to contact Citi but was unable to reach any representative with the knowledge to handle his request. Frustrated, Mr. Fos contacted Ms. Raymond as counsel to Citi, for assistance in securing the return of the paid and cancelled note. (Meanwhile, on November 23, 2011 the mortgage was cancelled by the St. Tammany Parish Clerk of Court).   On November 29, 2011 Mr. Fos wrote Ms. Raymond, requesting her to tell him when the cancelled note would be returned to him.   Kathy Murphy of Jackson & McPherson told Mr. Fos to contact Citi to recover the cancelled note.

Fos resumed his efforts to contact Citi.   Ultimately, on March 5, 2012 Fos was told by a Citi representative that the original note marked cancelled would not be returned but that he could be given a copy.

On March 22, 2012 Fos received a letter from Citi stating that the mortgage account had been paid in full on September 12, 2011; attached to the letter was a Lost Note Affidavit with a copy of the note.   Citi Vice President Paul DeGruccio signed the Lost Note Affidavit, which stated that the note had been paid in full, but the note had been misplaced, lost, or destroyed.   Attached to the Lost Note Affidavit was a Notarial Endorsement and Assignment of

Mortgage and Note, which stated that, as of June 30, 2011, MERS:

> is the legal and equitable owner of the said note and mortgage with full power to sell and assign the same; that it has executed no prior assignment or pledge thereof; that it has executed no release, discharge, satisfaction or cancellation of said mortgage; that it has executed no release of any portion of any of the security described in said mortgage; and that it has executed no instrument of any kind affecting the mortgage or the note or the liability of the maker or makers thereof....

> [f]or value received, the said [MERS] does hereby, assign, transfer, sell and deliver, without recourse to: CITIMORTGAGE, INC....one certain mortgage note made and subscribed by PAUL JAMES CASEY FOS AND ANDREA MORSHAEUSER FOS, which mortgage note is secured by a mortgage of as described herein executed by the same parties, and so paraphed by a Notary Public, n/a Parish, Louisiana on 04/22/2005 recorded under Registry 1491223....

The Notarial Endorsement was recorded with the Clerk of Court on July 25, 2011 under instrument number 1821120. According to Fos, the consideration or "value received" actually paid by Citi for the assignment and transfer of the mortgage note from MERS was de minimus. Thus, the Foses contend that Citi did not own or hold the note and the mortgage rights on the day Citi filed the petition for executory process, January 6, 2011. Because Citi neither owned nor held the note, the plaintiffs contend, it was not entitled to receive the amounts it claimed in the pleading filed on January 6, 2011; nor did Citi have rights to or an interest in the mortgage as it claimed in its pleading.

On July 30, 2012 plaintiffs sued Citimortgage, Inc., Anne Raymond, and Jackson & McPherson, LLC in state court. The

plaintiffs allege that Ms. Raymond "failed to fulfill her duties under La.C.C.P. art. 863(B)" when she signed the underlying petition for executory process and that Ms. Raymond also violated Rule 3.7 of the Rules of Professional Conduct by executing the verification attached to the petition for executory process.[4] Plaintiffs charge that one reason for Ms. Raymond's failure to make a reasonable inquiry into the facts is that Jackson & McPherson is running a "foreclosure mill" in which more foreclosures are processed than the staff of the firm allows. Based on the language in the Notarial Endorsement and the date of its recordation (July 2011), the plaintiffs allege that Citi wrongfully foreclosed on their property and that, by doing so, committed fraud on the court and on them; in addition to committing the tort of wrongful foreclosure, the plaintiffs also allege that Citi committed the torts of conversion; that it committed fraud on the public records of St. Tammany Parish; that the assignment of the note was a sale of a litigious right; and that Citi breached the Home Affordable Modification Program with respect to the plaintiffs' loan modification application.

The plaintiffs seek damages (1) for the conversion of the property for the period of the sheriff's constructive seizure in January 2011 until the note was assigned to Citi in June 2011; (2)

---

[4] By signing and filing the pleading, the plaintiffs assert, Ms. Raymond intentionally or negligently furthered the fraud committed by Citi.

7

for anxiety, embarrassment, and emotional stress, and (3) the difference between the amount the plaintiffs paid to Citi minus the amount Citi paid to MERS for the assignment of the note.   The plaintiffs also ask that the Court refer this matter to the District Attorney of St. Tammany Parish and "to take judicial notice that the nationwide foreclosure practices of Citimortgage have been investigated...by the Office of the Inspector General of the United States Department of Housing and Urban Development the results of the investigation having been published...."

Citi timely removed the lawsuit, invoking this Court's diversity and federal question jurisdiction.   The plaintiffs now seek remand, and the defendants seek to dismiss the plaintiffs' claims for failure to state a claim.

I.
A.

Although the plaintiffs challenge removal in this case, the removing defendant carries the burden of showing the propriety of this Court's removal jurisdiction.   See Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir.), cert. denied, 510 U.S. 868, 114 S. Ct. 192, 126 L.Ed.2d 150 (1993); Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988).   "Because removal raises significant federalism concerns, the removal statute is strictly construed." Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008). Further, "any doubt as to the propriety of removal should be resolved in favor of remand." Id.

*B.*

Federal Courts are courts of limited jurisdiction, possessing only the authority endowed by the United States Constitution and conferred by the United States Congress. Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001), cert. denied, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001).  Federal law allows for state civil suits to be removed to federal courts that have original jurisdiction over the action.  28 U.S.C. § 1441(a).  Suits not brought under federal law "may not be removed if any of the parties in interest properly joined and served as defendants ... [are] citizen[s] of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  For a defendant to invoke the Court's removal jurisdiction based on diversity, "the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied" including that the citizenship of every plaintiff is diverse from the citizenship of every defendant.  Smallwood v. Illinois Cent. R.R. Co., Inc., 385 F.3d 568, 572 (5th Cir. 2004)(en banc).

Citi invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332, which requires that complete diversity exists between the plaintiffs and all properly joined defendants, and that the amount in controversy exceeds $75,000.[5]  The plaintiffs are

_____

[5]In its notice of removal, Citi also asserts that this Court has federal question jurisdiction "to the extent that" the plaintiffs allege that they are third party beneficiaries of the

9

citizens of Louisiana, and Citimortgage is a New York corporation with its principal place of business in Missouri.  Although both Anne Raymond and Jackson & McPherson are Louisiana citizens, Citi urges the Court to disregard their Louisiana citizenship because they were improperly joined to defeat diversity.

*C.*

28 U.S.C. § 1359 "prohibit[s]" the Court "from exercising jurisdiction over a suit in which any party, by assignment or otherwise, has been improperly or collusively joined to manufacture federal diversity jurisdiction."   <u>Smallwood</u>, 385 F.3d at 572 (citing 28 U.S.C. 28 U.S.C. § 1359).   To establish that a non-diverse defendant has been improperly joined to defeat diversity jurisdiction, the removing party must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-

---

contract between Citi and the federal government under the Home Affordable Modification Program.  Citi seems to have abandoned the federal question basis for jurisdiction by failing to rely on it in response to the plaintiffs' motion to remand.   The plaintiffs contend that there is no private right of action under the Home Affordable Modification Program or the Troubled Asset Relief Program, citing <u>Miller v. Chase Home Finance, LLC</u>, 677 F.3d 1113, 1116 (11th Cir. 2012)(per curiam).  Plaintiffs also contend that the claim relating to HAMP is based on a state law theory for breach of contract.  Because Citi is invoking this Court's subject matter jurisdiction and has the burden of establishing the propriety of this Court's removal jurisdiction, and given that Citi has not advanced any arguments in its papers to support invocation of this Court's federal question jurisdiction, the Court finds that Citi has not met its burden of demonstrating that the Court has subject matter jurisdiction based on presentment of a federal question.

diverse party in state court." <u>Rico v. Flores</u>, 481 F.3d 234, 238-39 (5th Cir. 2007)(quoting <u>Smallwood</u>, 385 F.3d at 573).   The test for a defendant seeking to demonstrate the second issue is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." <u>Smallwood</u>, 385 F.3d at 573 (citing <u>Travis v. Irby</u>, 326 F.3d 644, 646-47 (5th Cir. 2003) and noting "[w]e adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not").[6]  In making this determination, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case. <u>Id.</u> at 574.

The Fifth Circuit instructs that the Court may resolve improper joinder claims in two ways: either by (1) "conduct[ing] a Rule 12(b)(6) type analysis, looking initially at the allegations of the complaint to determine whether the plaintiff has alleged a claim under state law against the in-state defendant"; or, if "a plaintiff has stated claim, but has misstated or omitted discrete facts that would determine the propriety of joinder[,]" the Court

---

[6]However, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." <u>Id.</u> (quoting <u>Badon v. RJR Nabisco, Inc.</u>, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

"may pierce the pleadings and conduct a summary inquiry." <u>Id.</u> at 573 (noting that the latter process should be undertaken sparingly and, if necessary, "only to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery").[7] The Court must resolve any contested issues of fact, and any ambiguity or uncertainty in the controlling state law, in the plaintiff's favor. <u>Travis</u>, 326 F.3d at 649 (citation omitted); <u>Gasch v. Hartford Accident & Indem. Co.</u>, 491 F.3d 278, 281 (5th Cir. 2007). Finally, Citi, as the removing party, "bears a heavy burden of proving that the joinder of the in-state part[ies] was improper." <u>Smallwood</u>, 385 F.3d at 574.[8]

D.

The Court's first inquiry, then, is whether Citi has carried its heavy burden of proving that the joinder of Anne Raymond and Jackson & McPherson was improper. If so, only then does the Court have jurisdiction to consider the merits of the defendants' Rule 12(b)(6) challenges to the technical deficiencies in the plaintiffs' claims. The Court turns to analyze the plaintiffs'

---

[7] "[T]he inability of the court to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." <u>Id.</u> at 574.

[8] Stated another way: "The doctrine of improper joinder is a 'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" <u>Campbell v. Stone Ins., Inc.</u>, 509 F.3d 665, (5th Cir. 2007)(citing <u>McDonal v. Abbott Labs.</u>, 408 F.3d 177, 183 (5th Cir. 2005)(quotation omitted)).

claims against the in-state defendants to determine whether they have a possibility of recovery against Raymond and Jackson & McPherson.

Citi contends that there is no reasonable basis to predict that the plaintiffs can recover against Ms. Raymond and Jackson & McPherson on their claims of malpractice, or breach of professional obligation.  The Court agrees.

The Louisiana Supreme Court has narrowly defined the circumstances in which an attorney may be sued by her client's adversary for conduct that was allegedly tortious but that the attorney undertook on behalf of her client:

> Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf. A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation.  The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client.

Montalvo v. Sondes, 637 So.2d 127, 130 (La. 1994).  A non-client, therefore, cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation.  Id.  Rather, an attorney may be liable to a non-client only for intentionally tortious conduct.  But, again, the Louisiana high court has narrowly circumscribed the contours of this potential recovery:

> Of course, identifying an intentional tort in the context
> of an attorney's actions may be more difficult than
> identifying a traditional intentional tort.  It is clear
> that the mere filing of a lawsuit, even if the suit
> appears meritless on its face, is not enough, since the
> attorney may be simply the instrument through which the
> client invokes judicial determination....  Rather, we
> believe **it is essential for the petition to allege facts
> showing specific malice or an intent to harm on the part
> of the attorney in persuading his client to initiate and
> continue the suit**....

<u>Id.</u> (citations omitted; emphasis added).

Thus, the Court's inquiry is narrowed: the Court has no reasonable basis to predict that the plaintiffs might be able to recover against Ms. Raymond and Jackson & McPherson if the plaintiffs allege only negligence or malpractice; rather, "the facts in [their] petition must establish that [the in-state defendants] intended to cause direct harm to [the plaintiffs] by filing [the petition for executory process]." <u>See id.</u> Focus on the specific allegations directed to Ms. Raymond and Jackson & McPherson in the plaintiffs' state court petition:

> 12.
> On or about January 10, 2011, Citimortgage represented by
> the Defendant Anne Raymond who at all times pertinent
> herein was a partner with the Defendant Jackson &
> McPherson, LLC, filed with the clerk of court for St.
> Tammany Parish a Petition for Executory Process....
> 13.
> In that verified Petition, Citimortgage, Raymond acting
> as both as the attorney for Citimortgage as well as a
> representative of Citimortgage, asserted that it was the
> holder of the Note allegedly secured by the Mortgage on
> the Fos' property.
> 14.
> Raymond, a member of the Louisiana Bar and acting in
> violation of her ethical responsibilities under Louisiana
> Rule of Professional Conduct 3.7, verified the

14

allegations made in the Petition.  Attorney and Notary
Public, Rader Jackson, a partner of the Defendant law
firm Jackson & McPherson, LLC notarized Raymond's
signature of the verification of the Petition.

                          15.

As a direct result of that improperly verified Petition,
an order was entered by the court on January 12, 2011 for
the Sheriff to seize and sell the property.

...

[The plaintiffs also allege in Paragraphs 20-28 that
Jackson & McPherson, on behalf of Citimortgage, sent to
the plaintiffs payoff quotes and, once the plaintiffs
paid off the loan, that they attempted to contact Ms.
Raymond to get assurances that the sheriff's sale had
been cancelled and to recover the cancelled note.]

...

                          40.

[B]y signing and filing [the petition for executory
process in January 2011], Raymond not only derogated the
Fos' rights and title to the property and with that the
interest in the Property but also furthered the frauds
committed by Citimortgage either intentionally or
negligently.  Raymond failed to fulfill her duties under
La.C.C.P. art. 863(B) by failing to make a reasonable
inquiry into the facts of the matter.

                          41.

On information and belief, one reason for Raymond's
failure to make a reasonable inquiry into the facts of
the matter is that the law firm of Jackson & McPherson is
running a "foreclosure mill" in which too many
foreclosures are processed given the staffing of the
firm.  The law firm of Jackson & McPherson is liable both
for the acts of its member, Anne Raymond...but also
independently liable for its own acts of taking on too
many foreclosure cases for too small of a fee and with
inadequate staffing so that it is unable to fulfill its
professional duty of diligence and competence.

                          42.

Raymond violated her ethical duties under Rule 3.7 of the
Professional Rules of Conduct of the Louisiana Supreme
Court Rules of Professional Conduct which generally
prohibits a lawyer from acting simultaneously as both an
advocate and witness in a matter....


                          43.

On information and belief, the verification executed by
Anne Raymond of the Petition for Executory Proceedings
notarized by Rader Jackson was not done in his presence

                          15

(given the foreclosure mill nature of the law practice) and thus was also faulty, invalid and wrongful.

The plaintiffs do not allege facts suggesting that Anne Raymond nor Jackson & McPherson committed an intentional tort. Rather, the plaintiffs allege that Ms. Raymond breached her ethical duties as a lawyer, failed to investigate the facts underlying the foreclosure, negligently verified the executory petition, and that Jackson & McPherson is a "foreclosure mill" that processes so many foreclosures that it compromises its ability to do so with due care. The plaintiffs do allege, but at best in conclusory fashion, in their petition that "Raymond...furthered the frauds committed by Citimortgage either intentionally or negligently." But, instead of alleging facts that would support an allegation of intentional conduct on Raymond's part,[9] the plaintiffs follow up this assertion with another factual allegation suggestive only of negligent conduct on her part: "Raymond failed to fulfill her duties under La.C.C.P. art. 863(B) by failing to make a reasonable inquiry into the facts of the matter." At most, the plaintiffs allege negligence on the part of Ms. Raymond and the law firm. Absent

---

[9]The Court notes that, similar to the federal pleading requirements, as the Louisiana Supreme Court observed in <u>Montalvo</u>, "Louisiana retains a system of fact pleading[; t]he mere conclusion of the pleader unsupported by facts does not set forth a cause or right of action." <u>Id.</u> at 131. Regardless of pleading standards, however, the inquiry here is whether the plaintiffs have any possibility of recovery based on any intentional conduct by the in-state defendants. There is no suggestion by the plaintiffs that the in-state defendants had a specific intent to harm the plaintiffs, as required by <u>Montalvo</u>.

from the petition are allegations of "facts showing specific malice or an intent to harm on the part of [Ms. Raymond or Jackson & McPherson] in persuading [Citi] to initiate and continue [the foreclosure proceeding]."   This is dispositive of the improper joinder inquiry:  Citi has demonstrated that there is no reasonable basis to predict that the plaintiffs might recover against Ms. Raymond and Jackson & McPherson for attorney negligence or malpractice;[10] their Louisiana citizenship will be disregarded.

II.

Rule 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted.  Such a motion "'is viewed with disfavor and is rarely granted.'"  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir.

---

[10]It is perhaps redundant to observe that the plaintiffs have no possibility of recovery against Ms. Raymond for her alleged violation of La.C.C.P. art. 863 or Rule 3.7 (see Montalvo, 637 So.2d at 131 n.6 (article 863, like Federal Rule of Civil Procedure 11, does not create a private cause of action); see also First nat'l Bank of St. Bernard v. Assavedo, 764 So.2d 162, 163–64 (La. App. 4 Cir. 5/24/00)(violation of a Rule of Professional Conduct does not give rise to a cause of action)); and no possibility of recovery against Jackson & McPherson for any alleged negligence on its part for "running a foreclosure mill", for the same reasons articulated in Montalvo.  Indeed, another Section of this Court has invoked Montalvo and determined that attorneys representing bank clients in foreclosure proceedings do not owe a professional duty to the plaintiff homeowners and, thus, cannot be liable for negligent breach of a professional obligation.  See Brooks v. Flagstar Bank, FSB, No. 11-67, 2011 WL 2710026 (E.D. La. July 12, 2011)(Vance, J.)(citation omitted).

17

1982)).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1940. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted).

The United States Supreme Court suggests a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950. First, the Court must identify pleadings that are conclusory and thus not entitled to the assumption of truth. Id. A corollary: legal conclusions "must be supported by factual allegations." Id. Second, for those pleadings that are more than merely conclusory, the Court assumes the veracity of those well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement to relief." Id.

This facial plausibility standard is met when the plaintiffs pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Claims that are merely conceivable will not survive a motion to dismiss; claims must be plausible. Twombley, 550 U.S. at 570; see also Iqbal, 129 S. Ct at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal 129 S. Ct. at 1949 (internal quotations omitted). In the end, evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiffs' claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting the motion into one for summary

judgment.  See United States ex rel. Willard v. Humana Health Plan
of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).

A.

Ms. Raymond and Jackson & McPherson have demonstrated that the
plaintiffs' claims against them should be dismissed for failure to
state a claim upon which relief may be granted.[11]  The plaintiffs'
claims -- that Raymond failed to fulfill her duties under La.C.C.P.
art. 863; that Raymond violated Rule 3.7 of the Rules of
Professional Conduct; that Jackson & McPherson run a "foreclosure
mill" and plaintiffs' other allegations that Raymond and Jackson &
McPherson acted carelessly in aiding their client, Citi, in the
foreclosure process -- all sound in negligence, and thus are not
actionable for the reasons stated earlier.  See Montalvo v. Sondes,
637 So.2d 127 (La. 1994).  The plaintiffs' state court petition
does not contain sufficient factual assertions, accepted as true,
to state a claim for relief that is plausible on its face.  Even
assuming for the sake of argument that Jackson & McPherson run a
"foreclosure mill", causing them to carelessly fulfill their duties
to their many clients and, even assuming Ms. Raymond violated Rule
3.7 and La.C.C.P. art. 863, and otherwise negligently carried out
her professional duties in representing Citi in the foreclosure
proceedings, the plaintiffs cannot recover from Raymond or Jackson

---

[11]Of course if the plaintiffs have no reasonable
possibility of recovery, they have not stated a claim for relief
that is plausible on its face.

20

& McPherson because a non-client quite clearly under the law cannot recover for the negligent conduct of its adversary's counsel.

*B.*

Citi contends that the plaintiffs' claims against it for fraud, conversion, wrongful foreclosure, third-party beneficiary, and sale of a litigious right should be dismissed for failure to state a claim. The plaintiffs counter that they have stated claims for fraud, conversion/wrongful foreclosure, and third party beneficiary contract, and add that their allegation regarding the sale of a litigious right is not a claim but, rather, a measure of damages for Citi's alleged fraud. Moreover, the plaintiffs request that, if the Court finds that their pleadings do not satisfy Rule 9(b), that they be granted leave to amend their state court petition.

The Court finds that submission of supplemental papers would advance the Court's analysis of these issues. Accordingly, before ruling on Citi's challenge to the technical sufficiency of the plaintiffs' allegations, IT IS ORDERED: that, no later than October 31, 2012, the plaintiffs and Citi must submit supplemental papers, with citation to relevant authority, addressing: (1) prescription, in particular, whether the plaintiffs' claims are facially prescribed[12] and, if so, whether prescription was suspended or

---

[12]With respect to whether the plaintiffs' fraud claim has prescribed, the parties should address the relevance of not only the date the petition for executory process was filed but also the

interrupted;[13] (2) the substantive elements of wrongful foreclosure; and (3) whether the plaintiffs' fraud claim is stated with sufficient particularity and, if not, whether leave to amend should be granted to remedy the deficiency.  IT IS FURTHER ORDERED: that the hearing on Citimortgage's motion to dismiss is hereby continued to November 7, 2012, on the papers.  Finally, IT IS FURTHER ORDERED: that the plaintiffs' motion to remand is DENIED; and Raymond's and Jackson & McPherson's motion to dismiss is GRANTED.


New Orleans, Louisiana, October 24, 2012


_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

date that the Notarial Endorsement was allegedly recorded.

[13]A federal court sitting in diversity applies the forum state's prescription period as substantive law.  Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010).  Because the burden of proving that a suit has prescribed is an affirmative defense, the burden of proving prescription rests with the moving party.  Taranto v. Louisiana Citizens Prop. Ins. Corp., 62 So.3d 721, 726 (La. 2011)(citing Bailey v. Khoury, 891 So.2d 1268, 1275 (La. 2005).  However, if a petition is prescribed on its face, then the burden shifts to the plaintiff to negate the presumption by establishing that prescription has been suspended or interrupted.  Id.