UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANDREA MORSHAEUSER, wife of and PAUL JAMES CASEY FOS | CIVIL ACTION |
| v. | NO. 12-2210 |
| CITIMORTGAGE, INC., ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is Citimortgage's Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

**Background**

This litigation arises from the alleged wrongful foreclosure initiated by Citimortgage, Inc. on Andrea Moreshaeuser and James Paul Casey Fos' house in Covington, Louisiana. The facts as alleged in the state court petition are more completely set forth in this Court's October 24, 2012 Order and Reasons.

On April 22, 2005 Andrea Moreshaeuser and Paul James Casey Fos bought a house at 70355 8th Street in Covington, Louisiana. The purchase was made with a loan from Parish National Bank; the loan was evidenced by a Note (made payable to Parish National Bank) and secured with a mortgage, which was given to Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary. Parish National Bank then assigned and transferred the mortgage and mortgage note to MERS; the assignment of mortgage was recorded with the Clerk of St. Tammany Parish on April 24, 2006. While the Foses were making

1

their monthly payments under the note, Citimortgage informed them that the payments should be made to Citi.

During the Fall of 2010, the Foses fell behind on the payments on the note. Mr. Fos remained in contact with Citi. When Citi accelerated the note, Mr. Fos says that he attempted to pay the arrears in full, but Citi refused to accept the payment offer; a representative told him that the loan had been foreclosed.

On January 10, 2011 Anne Raymond, a partner with Jackson & McPherson, on Citi's behalf, filed with the Clerk of Court of St. Tammany Parish a petition for executory process to foreclose on the mortgage and enforce the note. In the verified petition, Citi and Raymond (acting as attorney for Citi and representative of Citi) asserted that Citi was the holder of the note secured by the mortgage on the Fos property. Two days later, the St. Tammany Parish court ordered the Sheriff to seize and sell the property. On January 24, 2011 the Sheriff of St. Tammany Parish constructively seized the Fos property.

During the spring and summer of 2011 Mr. Fos applied twice for a loan modification or reinstatement. Fos claims that Citi failed to properly process the modification and reinstatement application, failed to keep him informed, and failed and refused to staff its departments to process modification/reinstatement applications. Also during this time, the Sheriff's sale of the house was set, cancelled, and re-set numerous times. It is the Foses position

2

that the re-settings were done in bad faith to increase fees and as part of a plan to make any final loan payoff more difficult and so that the Foses could not reinstate or payoff their loan.

Ultimately, after Citi submitted to Fos some payoff quotes, on September 6, 2011, Fos transferred to Jackson & McPherson the payoff amount of $124,194.69; the loan was paid in full. After efforts to secure from Citi the cancelled note,[1] on March 22, 2012 Fos received a letter from Citi stating that the mortgage account had been paid in full on September 12, 2011; attached to the letter was a Lost Note Affidavit (which stated that the note had been paid in full but the note had been lost) with a copy of the note. Attached to the Lost Note Affidavit was a Notarial Endorsement and Assignment of Mortgage and Note, which stated that, as of June 30, 2011, MERS:

> is the legal and equitable owner of the said note and mortgage with full power to sell and assign the same; that it has executed no prior assignment or pledge thereof; that it has executed no release, discharge, satisfaction or cancellation of said mortgage; that it has executed no release of any portion of any of the security described in said mortgage; and that it has executed no instrument of any kind affecting the mortgage or the note or the liability of the maker or makers thereof....
>
> [f]or value received, the said [MERS] does hereby, assign, transfer, sell and deliver, without recourse to: CITIMORTGAGE, INC....one certain mortgage note made and subscribed by PAUL JAMES CASEY FOS AND ANDREA MORSHAEUSER FOS, which mortgage note is secured by a mortgage of as

---

[1] On November 23, 2011 the mortgage was cancelled by the St. Tammany Parish Clerk of Court.

3

> described herein executed by the same parties, and so paraphed by a Notary Public, n/a Parish, Louisiana on 04/22/2005 recorded under Registry 1491223....

The Notarial Endorsement was recorded with the Clerk of Court on July 25, 2011. According to Fos, the consideration or "value received" actually paid by Citi for the assignment and transfer of the mortgage note from MERS was de minimus. Because Citi neither owned nor held the note on the day Citi filed the petition for executory process, January 6, 2011, the plaintiffs contend, it was not entitled to receive the amounts it claimed in the pleading filed on January 6, 2011; nor did Citi have rights to or an interest in the mortgage as it claimed in its pleading.

On July 30, 2012 plaintiffs sued Citimortgage, Inc., Anne Raymond, and Jackson & McPherson, LLC in state court.[2] Based on the language in the Notarial Endorsement and the date of its recordation (July 2011), the plaintiffs allege that Citi wrongfully foreclosed on their property and that, by doing so, committed fraud on the court and on them; in addition to committing the tort of wrongful foreclosure, the plaintiffs also allege that Citi committed conversion; that it committed fraud on the public records

---

[2]The plaintiffs had alleged that Ms. Raymond "failed to fulfill her duties under La.C.C.P. art. 863(B)" when she signed the underlying petition for executory process, that Ms. Raymond also violated Rule 3.7 of the Rules of Professional Conduct by executing the verification attached to the petition for executory process, and that Jackson & McPherson is running a "foreclosure mill" in which more foreclosures are processed than the staff of the firm allows.

of St. Tammany Parish; that the assignment of the note was a sale of a litigious right; and that Citi breached the Home Affordable Modification Program with respect to the plaintiffs' loan modification application. They filed suit in state court.

The plaintiffs seek damages (1) for the conversion of the property for the period of the Sheriff's constructive seizure in January 2011 until the note was assigned to Citi in June 2011; (2) for anxiety, embarrassment, and emotional stress, and (3) the difference between the amount the plaintiffs paid to Citi minus the amount Citi paid to MERS for the assignment of the note. The plaintiffs also ask that the Court refer this matter to the District Attorney of St. Tammany Parish and "to take judicial notice that the nationwide foreclosure practices of Citimortgage have been investigated...by the Office of the Inspector General of the United States Department of Housing and Urban Development the results of the investigation having been published...."

Citi timely removed the lawsuit, invoking this Court's diversity and federal question jurisdiction. The plaintiffs requested remand of this lawsuit and the defendants sought dismissal for failure to state a claim. On October 24, 2012, this Court denied the plaintiffs' motion to remand, granted Anne Raymond and Jackson & McPherson, LLC's motion to dismiss, and continued Citi's motion to dismiss pending submission of supplemental papers. Citi now seeks dismissal of the plaintiffs' claims for failure to

state a claim.

I.

Rule 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. Such a motion "'is viewed with disfavor and is rarely granted.'" See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1940. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted).

The United States Supreme Court suggests a "two-pronged approach" to determine whether a complaint states a plausible claim

for relief.  <u>Iqbal</u>, 129 S.Ct. at 1950.  First, the Court must identify pleadings that are conclusory and thus not entitled to the assumption of truth.  <u>Id.</u>  A corollary: legal conclusions "must be supported by factual allegations."  <u>Id.</u>  Second, for those pleadings that are more than merely conclusory, the Court assumes the veracity of those well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement to relief."  <u>Id.</u>

This facial plausibility standard is met when the plaintiffs pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> at 1949.  Claims that are merely conceivable will not survive a motion to dismiss; claims must be plausible.  <u>Twombley</u>, 550 U.S. at 570; <u>see</u> <u>also</u> <u>Iqbal</u>, 129 S.Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Iqbal</u> 129 S. Ct. at 1949 (internal quotations omitted).  In the end, evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> at 1950.

II.
*A.*

A federal court sitting in diversity applies the forum state's prescription period as substantive law. Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010). Because the burden of proving that a suit has prescribed is an affirmative defense, the burden of proving prescription rests with the moving party. Taranto v. Louisiana Citizens Prop. Ins. Corp., 62 So.3d 721, 726 (La. 2011)(citing Bailey v. Khoury, 891 So.2d 1268, 1275 (La. 2005)). However, if a petition is prescribed on its face, then the burden shifts to the plaintiff to negate the presumption by establishing that prescription has been suspended or interrupted. Id.

"According to [the] civilian tradition, prescription is defined as a means of acquiring real rights or of losing certain rights as a result of the passage of time." Id. (citation omitted). "[T]he fundamental purpose of the prescription statutes", the Louisiana Supreme Court has observed, "is 'to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof.'" Id. (quoting Cichirillo v. Avondale Indus., Inc., 917 So.2d 424 (La. 2005)). Of the three types of prescription, "liberative prescription" is "a mode of barring actions as a result of inaction of a period of time." La.C.C. art. 3447. If prescription is suspended, "the

8

period of suspension is not counted toward accrual of prescription"; "[p]rescription commences to run again upon the termination of the period of suspension." La.C.C. art. 3472.

*B.*

It is undisputed that the plaintiffs' claims for fraud, conversion, and wrongful foreclosure are subject to a one-year prescriptive period. Citi contends that each of these claims is facially prescribed. The plaintiffs counter that the claims are not prescribed, invoking the doctrine of *contra non valentem*. At this stage of the litigation, based on the plaintiffs' allegations alone, the Court agrees with the plaintiffs.

"Delictual actions are subject to a liberative prescription of one year[;] This prescription commences to run from the day injury or damage is sustained...." La.C.C. art. 3492. Prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished. <u>Carter v. Haygood</u>, 892 So.2d 1261, 1268 (La. 2005).

In exceptional cases, prescription may be suspended by application of an equitable jurisprudential exception to statutory prescription: *contra non valentem non currit praescriptio* (which means that prescription does not run against a person who could not bring his suit) halts the running of prescription when the circumstances of the case fall into one of four categories. <u>Id.</u> Of the four instances where *contra non valentem* is applied to

prevent the running of prescription, the plaintiffs here invoke the one commonly known as the discovery rule: "where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant", prescription may be prevented from running until the plaintiff knew or should have known of the cause of action. Id. (noting that the four categories of *contra non valentem* "allow the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled"). Prescription begins to run when the plaintiffs have "a reasonable basis to pursue a claim against a specific defendant." Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La. 1987). Stated differently: "'Mere apprehension that something might be wrong' does not make delay in filing an action unreasonable...; [t]here must be knowledge of the tortious act, the damage caused by the tortious act, and the causal link between the act and the damage before one can be said to have 'constructive notice' of one's cause of action." Ducre v. Mine Safety Appliances, 963 F.2d 757, 760 (5th Cir. 1992).

The plaintiffs allege in their complaint that (1) Citi informed them that their mortgage payments should be made to it; (2) Fos fell behind on mortgage payments; (3) Citi intentionally accelerated the note and refused to accept Fos' offer of payment in violation of the mortgage; (4) based on an improperly verified

10

petition for executory process filed on January 10, 2011 the court in St. Tammany Parish ordered the Sheriff to constructively seize the plaintiffs' property; (5) Fos twice applied for loan modification or reinstatement but Citi refused to process the applications; (6) in response to Citi's second payoff quote, Fos paid the remaining loan in full; (7) Fos attempted to secure return of the cancelled note from Citi; (8) plaintiffs received from Citi on March 22, 2012 a lost note affidavit with a copy of the note. The plaintiffs contend that March 22, 2012 was the first they could have known that Citi did not own or hold the note or mortgage rights on January 10, 2011 and that the discovery rule applies to prevent the running of prescription on their fraud and conversion/wrongful foreclosure claims until that date. Citi makes no persuasive argument to the contrary. At this stage of the litigation, taking these allegations as true, the Court finds these allegations sufficient to demonstrate the applicability of *contra non valentem* to suspend the running of prescription until March 2012 on the plaintiffs' fraud, conversion, and wrongful foreclosure claims.[3]

### III.

Citi contends that the plaintiffs' claims of fraud,

---

[3]The Court makes no finding on the merits of any defense of prescription the defendant may invoke at a later stage of this litigation. Moreover, if plaintiffs' allegations can be proved, the facts as alleged are quite troublesome.

conversion, wrongful foreclosure, third-party beneficiary, and sale of a litigious right should be dismissed for failure to state a claim. The plaintiffs counter that they have stated claims for fraud, conversion/wrongful foreclosure, and third party beneficiary contract, but point out that their allegation regarding the sale of a litigious right is not a claim but, rather, a measure of damages for Citi's alleged fraud. Moreover, the plaintiffs request that, if the Court finds that their pleadings do not satisfy Rule 9(b), that they be granted leave to amend their state court petition.

    A.    Fraud

Louisiana Civil Code article 1953 provides:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

The elements of a fraud claim are (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury. <u>Newport Ltd. v. Sears, Roebuck & Co.</u>, 6 F.3d 1058, 1068 (5th Cir. 1993)(citations omitted).

Rule 9(b) of the Federal Rules of Civil Procedure provides that when alleging fraud "a party must state with particularity the circumstances constituting fraud or mistake... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). To satisfy Rule 9(b), a plaintiff must (1) specify the statements alleged to be fraudulent, (2)

12

identify the speaker or author of the statements, (3) state when and where the statements were made, and (4) state why the statements were fraudulent. Hermann Holdings Ltd. v. Lucent Technologies, Inc., 302 F.3d 552, 564-65 (5th Cir. 2002)(citations omitted). The Fifth Circuit commands that Rule 9(b) be interpreted strictly. Id.

Citi contends that the plaintiffs' fraud claim does not satisfy Rule 9(b) because they simply discuss Citi's alleged fraud in general terms and fail to specifically allege facts that would support an inference that Citi acted with the intent to deceive. The Court agrees.

Although malice, intent, and knowledge may be alleged in general terms, the Fifth Circuit requires that plaintiffs "set forth specific facts to support an inference of fraudulent intent." See Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994). The plaintiffs here have made no such charge against Citi in their state court petition; they fail to allege any facts that would support an inference that Citi *intended* to deceive the plaintiffs or otherwise acted with fraudulent intent. Their conclusory allegation that "Citimortgage committed fraud...against the Fos in causing [the January 6, 2011 petition for executory process] to be made" falls well short of satisfying Rule 9(b). The plaintiffs must identify Citi officials that made specific fraudulent statements at a specified time and place, and must also allege why

13

those specific statements amount to fraud.

Not only must the plaintiffs' fraud claim against Citi be dismissed, but to the extent that the plaintiffs purport to allege fraud on the court and public records of St. Tammany Parish, any such claims are likewise dismissed for failure to state a claim.

B. Conversion/Wrongful Foreclosure

Citi contends that the plaintiffs' claims for conversion and wrongful foreclosure should be dismissed because they are prescribed. The Court has determined, however, that these claims survive Citi's prescription challenge at this state of the litigation.

The plaintiffs contend that their conversion claim is the same as their wrongful foreclosure claim, and they point out that the defendant failed to challenge whether they had stated a substantive claim for relief. For the first time in its submission of supplemental papers, Citi contends that the plaintiffs' conversion/wrongful foreclosure claim fails as a matter of law because the plaintiffs admit that, at the time of the foreclosure/seizure of their property, they were in arrears. Because this challenge was not raised in their moving papers, however, the Court declines to address at this time this new ground for dismissing the plaintiffs' conversion/wrongful foreclosure claim.

C. Third-Party Beneficiary to Contract

Citi contends that the plaintiffs' attempt to allege that they are third party beneficiaries of the contract between the federal government and Citi (presumably under the Home Affordable Modification Program) fails because the plaintiffs make no allegations necessary to prove a "stipulation pour autrui" under Louisiana Civil Code article 1971. The plaintiffs counter that the Court should allow them to engage in discovery on this claim because the clear purpose of the HAMP program was to assist distressed borrowers like them.

Louisiana's Civil Code provides that a contracting party may stipulate a benefit for a third person not a party to the contract; specifically, article 1978 provides:

> A contracting party may stipulate a benefit for a third person called a third party beneficiary.
> Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

To establish a "stipulation pour autrui" (a contractual provision that benefits a third-party and gives the third-party a cause of action against the promisor for specific performance), there must be a clear expression of intent to benefit the third-party. See Stall v. State Farm Fire and Cas. Co., 995 So.2d 670 (La. App. 4th Cir. 2008). "A stipulation pour autrui is never presumed but, rather, the intent of contracting parties to stipulate a benefit in favor of a third-party must be made manifestly clear." See Paul v.

15

Louisiana State Employees' Group Ben. Program, 762 So.2d 136 (La. Ap. 1st Cir. 2000). "[T]he third-party relationship must form the consideration for a condition of the contract, and the benefit may not be merely incidental to the contract." Meyer v. Tufaro, 934 So.2d 861 (La. App. 4th Cir. 2006). Finally, the party demanding performance of an obligation pursuant to a stipulation pour autrui bears the burden of proving the existence of this obligation. See La.C.C. art. 1831.

As the Eleventh Circuit has observed:

> During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201 – 5261. EESA charges the Secretary of the United States Department of the Treasury with acting in a manner that "preserves homeownership and promotes jobs and economic growth." Id. § 5201(2)(B). To this end, the Department of the Treasury created the making Home Affordable Program, a program that included HAMP.
> HAMP is designed to prevent avoidable home foreclosures by incentivizing loan servicers to reduce the required monthly mortgage payments for certain struggling homeowners. Servicers are obliged to abide by guidelines promulgated by the Secretary when determining a mortgagor's eligibility for a permanent loan modification.... Neither HAMP nor EESA expressly creates a private right of action for borrowers against loan servicers.

Miller v. Chase Home Finance LLC, 677 F.3d 1113, 1116 (11th Cir. 2012)(holding that no implied right of action exists: "EESA was not passed for the 'especial benefit' of struggling homeowners, even though they may benefit from HAMP's incentives to loan servicers"). It is because Congress did not create a private cause of action for borrowers like the plaintiffs that the plaintiffs here seek to hold

16

Citi liable under the third-party beneficiary theory. However, as the Seventh Circuit has observed, "[m]ost...courts hold[] that borrowers were not intended third-party beneficiaries of the [Servicer Participation Agreements pursuant to HAMP]." Wigod v. Wells Fargo Bank, 673 F.3d 547, 560 n.4 (7th Cir. 2012)(citing cases). Absent any compelling argument as to why this Court should not follow the majority view, this Court joins those courts that have rejected the proposition that borrowers like the Foses were intended third-party beneficiaries of HAMP Service Participation Agreements; thus, the plaintiffs cannot establish a stipulation pour autrui as a matter of law, and that claim must be dismissed. See Wigod, 673 F.3d at 560 n.4; see also, e.g., Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 127-28 (D.N.H. 2012); Boyd v. U.S. Bank, N.A. ex. Rel. Sasco Aames Mortg. Loan Trust, Series 2003-1, 787 F. Supp. 2d 747, 757 (N.D. Ill. 2011); Marks v. Bank of America N.A., No. 10-8039, 2010 WL 2572988, at *4-5 (D. Ariz. June 22, 2010); Villa v. Wells Fargo Bank, N.A., No. 10-81, 2010 WL 935680, at *2-3 (S.D. Cal. Mar. 15, 2010).

D.  Sale of a Litigious Right

Citi contends that the plaintiffs' claim for sale of a litigious right should be dismissed because the right of Citi to institute the foreclosure was not contested in the foreclosure action. The plaintiffs counter that they are not alleging a separate claim for sale of a litigious right but, rather, only

17

assert it as a measure of damage in connection with Citi's alleged fraud.

It is unclear whether the plaintiffs in fact oppose the defendant's motion to dismiss this claim for relief. If the plaintiffs do not oppose Citi's motion to dismiss their sale of a litigious right claim, then the motion should be granted as unopposed. Even if the plaintiffs intend to oppose the defendant's motion by characterizing the sale of litigious right claim as a measure of damages, however, Citi has demonstrated that the plaintiffs have failed to state a claim for relief that is plausible on its face.

As the defendants have pointed out, Louisiana Civil Code Article 2652 expressly provides that a right is litigious "when it is contested in a suit already filed." La.Civ. Code art. 2652; see also <u>Arrington v. Republic Credit Corp.</u>, No. 02-2687, 2002 WL 31844905, at *5 (E.D. La. Dec. 16, 2002)(Vance, J.). The right is contested only once an answer or defense has been filed in response to the suit filed. <u>First Nat'l Bank of Jefferson Parish v. Keyworth</u>, 670 So.2d 1288 (La.App. 5th Cir. 1996)("In an executory proceeding, defenses or objections may be asserted either through an injunction to arrest the seizure and sale, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale").

Here, the plaintiffs allege that the assignment from MERS to

Citi was the sale of a litigious right pursuant to Article 2652. But even according to the allegations of the state court petition, Citi's right to institute the foreclosure was not contested in the foreclosure proceeding; plaintiffs do not allege that they filed an answer, plea or defense. Accordingly, the plaintiffs fail to state a claim upon which relief may be granted for the sale of a litigious right.

Accordingly, IT IS ORDERED: that Citi's motion to dismiss is GRANTED in part (insofar as the plaintiffs' fraud, third-party beneficiary, and sale of a litigious right claims are hereby dismissed) and DENIED in part (insofar as the plaintiffs' conversion/wrongful foreclosure claim survives the defendant's challenge). IT IS FURTHER ORDERED: that the plaintiffs' request for leave to amend their state court petition is GRANTED.[4]

New Orleans, Louisiana, November 14, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[4] The plaintiffs request leave to amend their state court petition to the extent this Court sustains the defendant's challenge to the sufficiency of their fraud allegations. Given that this is the plaintiffs' first request to do so and the defendant fails to suggest that it would be prejudiced by any amendment at this stage in the litigation, the Court will permit the plaintiffs to amend their state court petition, upon the filing of a proper motion, no later than 7 days from this Order and Reasons.